IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-278-BO

| | |
|---|---|
| CUSTOM DYNAMICS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| CYRON, INC. and ALI JAVADI, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on plaintiff's motion for default judgment [DE 16] and defendants' motions to set aside default [DE 27], to dismiss [DE 29], and to transfer the case [DE 31]. The parties have also filed consent motions to seal [DE 62, 64]. For the reasons discussed below, the Court grants the motion to set aside default and dismisses the case without prejudice for lack of personal jurisdiction.

### BACKGROUND

Plaintiff Custom Dynamics, LLC is a North Carolina company that markets and sells lighting accessories for motorcycles, utility trailers, trucks, and boats. Pl.'s Comp. ¶¶ 1, 7. One of plaintiff's popular product lines is PROBEAM® (hereinafter PROBEAM), which includes LED turn signals, taillights, headlamps, passing lamps, filler bars, tribars, fender lights, taillight panels, and saddle bag lights. *Id.* ¶ 8. Defendants Cyron, Inc. and its owner, Ali Javadi, are based in California. *Id.* ¶ 2–3, 12. Cyron markets and sells LED lighting accessories for motorcycles, automobiles, and recreational vehicles. *Id.* One of Cyron's products is a turn signal light for motorcycles, sold under the name Torch. *Id.* ¶ 13.

1

In advertising the Torch turn signals, defendants made statements comparing the relative features of Torch and PROBEAM. *Id.* ¶¶ 18–22. For instance, defendants' advertisements stated that PROBEAM turn signals only have a view angle of 30° whereas Torch products have a view angle of 120°. *Id.* ¶¶ 16, 17. Defendants' advertisements also claimed that Torch lights were brighter. *Id.* ¶ 18. Plaintiff contends that these comparisons and statements are false. *Id.* ¶ 15. Plaintiff alleges that PROBEAM has superior functioning and, in fact, defendants' Torch products do not even comply with Department of Transportation ("DOT") regulations. *Id.* ¶¶ 23–32.

Plaintiff filed this suit on July 3, 2019, bringing claims against defendants for (1) false advertising, in violation of 17 U.S.C. § 1125(a)(1)(B), (2) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1, and (3) unfair trade practice, in violation of California Business and Professional Code § 17200.

Defendants failed to timely appear and the Clerk entered default on September 16, 2019. Plaintiff moved for default judgment on October 8, 2019. Defendants then appeared in the case on October 30, 2019 in response to plaintiff's default judgment motion. Defendants' counsel, retained the day prior, asked the Court for an extension to file motions and respond to plaintiff's default judgment motion. The Court granted this request. On November 26, 2019, defendants filed motions to set aside the default, to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), or alternatively, to transfer the case to the Central District of California.

Based on plaintiff's complaint, the Court was not satisfied that it had personal jurisdiction over defendants in order to enter the default judgment. Consequently, the Court ordered limited discovery and supplemental briefing on the issue of personal jurisdiction. Discovery revealed the following facts about defendants' advertising activities. Cyron directly compared its products to PROBEAM in its advertising. Cyron published the advertisements on its website, where it sells its

2

products. Cyron Resp. to RFA No. 4, 7–9, DE 49-1. Cyron also published the advertisements on its Facebook page. *Id.* Additionally, in March 2019, Cyron sent a mass email to motorcycle lighting dealers with the allegedly false advertisements attached. Cyron Resp. to RFA Nos. 2, 6, 10–11, DE 49-1; 2d Pribula Decl., ¶¶ 3–6, Ex. A, DE 50. The mass email was sent to over 300 dealers throughout the county, including at least seven in North Carolina. *Id.* Two more email blasts were sent nationwide to various customer lists on May 17 and May 20. Cyron Resp. to Interrog. 5–6, DE 49-1. Fifteen of these recipients were North Carolinians. *Id.* Mr. Javadi appears to have been personally involved in these marketing activities. Finally, in early May 2019, Cyron received an email inquiry from an individual living in North Carolina. 2d Pribula Decl., Ex. B, DE 50. The email inquired about the Torch product and requested more information. *Id.* A few days later, Cyron replied to the email by sending allegedly false advertising. *Id.*

In their supplemental brief, defendants ask the Court to dismiss the claims against both defendants for lack of personal jurisdiction. Defendants also contend the Court lacks subject-matter jurisdiction. Plaintiff argues that the Court has personal jurisdiction over both defendants and that Cyron waived its right to contest personal jurisdiction because as initially raised—that is, before its supplemental brief on the issue—defendants only raised a personal jurisdiction defense as to Mr. Javadi. Accordingly, plaintiff asks the Court to deny defendants' motions and enter default judgment. All pending motions are fully briefed and are ripe for disposition.

## DISCUSSION

Defendants move to set aside the default entered against them in September 2019. The decision to set aside default lies within the Court's discretion. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006). In deciding whether to set aside default, a district court should consider whether the moving party has a meritorious defense, acted with reasonable

3

promptness, has a history of dilatory action, was personally responsible for the default, any potential prejudice, and whether there are less drastic sanctions available. *Id.* at 204–05. The law disfavors default judgments. *E.g., Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

Some of these factors clearly cut against defendants. Mr. Javadi was personally served with process on July 15, 2019 at Cyron's place of business. Defendants made no effort to retain counsel until plaintiff moved for default judgment, and so defendants, not their attorneys, are responsible for the delay. In addition, defendants filed a demonstrably false affidavit with the Court contesting service of process—a position from which they have since retreated. Nevertheless, as explained below, the Court concludes that setting aside the default is proper because it lacks personal jurisdiction over the defendants.

Subject-matter jurisdiction

The Court briefly addresses defendants' argument that the Court lacks subject-matter jurisdiction, which is a threshold issue. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). In its complaint, plaintiff pleaded federal question jurisdiction because of its cause of action under the Lanham Act and supplemental jurisdiction for the remaining state law claims. Defendants contend that this Court lacks subject-matter jurisdiction because, in their view, plaintiff is attempting to backdoor the enforcement of DOT regulations through the Lanham Act claim despite there being no private cause of action to enforce these regulations. This argument clearly misconstrues plaintiff's complaint. Plaintiff is asserting a Lanham Act claim for false advertising about PROBEAM. Plaintiff is not trying to enforce DOT regulations. The allegations accusing Torch products of noncompliance are merely additional factual context for the complaint. Subject-matter jurisdiction exists.

4

Case 5:19-cv-00278-BO   Document 67   Filed 06/15/20   Page 4 of 9

Personal jurisdiction

The Court now turns to personal jurisdiction, beginning its analysis by addressing plaintiff's argument that Cyron waived its personal jurisdiction defense. "Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Here, defendants have raised personal jurisdiction as a defense for both Cyron and Mr. Javadi on their Rule 12(b)(2) motion. The Court finds that defendants did not waive this defense as to Cyron merely because, prior to jurisdictional discovery, defendants had only raised it for Mr. Javadi. The Court has yet to rule on the pending Rule 12(b)(2) motion, and the arguments from defendants' supplemental brief are incorporated with the motion.

Federal courts may exercise personal jurisdiction over an out-of-state defendant if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Because North Carolina's long-arm statute is designed to extend jurisdiction over nonresident defendants to the fullest extent permitted by due process, these inquiries collapse into one. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676 (1977). Due process requires that a defendant have "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted).

An inquiry into specific jurisdiction requires courts to examine "the relationship among the defendant, the forum, and the litigation." *Walden,* 571 U.S. at 283–84 (internal quotations omitted). To determine specific jurisdiction, courts look at "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted).

Internet activity conducted from outside the forum can serve as a basis for personal jurisdiction when a defendant "(1) directs electronic activity into the State, (2) with the *manifested intent* of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714 (emphasis added). Also, when personal jurisdiction is based on an "effects test" theory, defendant must have "expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 397–98 n.7 (4th Cir. 2003).

This lawsuit arises out of defendants' allegedly false advertisements comparing PROBEAM and Torch. These advertisements were posted publicly on Cyron's website and Facebook page. They were blasted out via email to hundreds of dealers across the country. And, in one instance, an advertisement was emailed to a potential customer who happened to be in North Carolina. The advertisements, however, were never "expressly aimed" at North Carolina; there was no manifested intent to direct the advertisements at the forum.

To start, Cyron merely posting the advertisements on its own website and Facebook page, which are available to everyone, does not create personal jurisdiction in North Carolina. While

these postings may have caused harm felt in North Carolina, the "focal point" of the advertisements was not North Carolina. *Carefirst*, 334 F.3d at 398. In *Carefirst*, a Maryland-based health insurer, Carefirst, alleged that an Illinois non-profit, Carefirst Pregnancy Center ("CPC"), intentionally infringed its common law and federally registered trademark rights by using the Carefirst name on its website. *Id.* at 393. Carefirst argued CPC expressly aimed tortious conduct at Maryland by setting up a semi-interactive website, which was accessible from Maryland, and by maintaining a relationship with a Maryland web hosting company. *Id.* at 398. The Fourth Circuit rejected both theories. Relying on *ALS Scan* and *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), the court emphasized that in order for a Maryland-based court to exercise jurisdiction over CPC, "CPC must have acted with the 'manifest intent' of targeting Marylanders." *Id.* at 400. CPC's generally accessible website was not targeting Marylanders in any specific way, and thus, did not meet the "manifest intent" standard. *Id.* at 400–01. The fact that the harm from defendant's tortious online conduct was felt in Maryland was insufficient. *Id.* at 401.

Just like the trademark-infringing website in *Carefirst*, defendants' website and Facebook advertisements cannot be said to be targeting North Carolina with manifest intent. There is nothing from discovery that suggests defendants customized the advertisements for North Carolinians or made a concerted effort to ensure that North Carolinians viewed the advertisements. For a similar reason, Cyron's email blasts, which were sent to recipients nationwide and were not in any way targeted at North Carolina, do not create personal jurisdiction. It is not enough that defendant knew, or should have known, that its email blasts to hundreds of recipients would reach North Carolina. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884–86 (2011) (explaining that because purposeful availment is needed with respect to the particular sovereign in question,

7

defendant's targeting of the entire U.S. market was not sufficient for personal jurisdiction in New Jersey, even though defendant's products were very likely to end up there).

Finally, the email exchange with the single North Carolina resident is not enough to support an exercise of personal jurisdiction. Cyron received the initial email inquiry on May 11, 2019. The sender stated that he had stopped at a motorcycle retailer in Florida, saw the Cyron product, and was interested in learning more. The email provided a name, email address, and phone number. Cyron replied by sending as an attachment an allegedly false advertisement that compared PROBEAM and Torch. The inquirer followed up once and asked about the anticipated retail price for Torch and Cyron responded with the requested information. This short email exchange, which was not initiated by defendants, is insufficient for personal jurisdiction. Like the other advertising activity, it lacks intent to target North Carolina. The only aspect of the email that could have raised the possibility for defendants that they were communicating with a North Carolinian was that the phone number on the first email used a North Carolina area code. But in an age where phone numbers are transferred constantly between mobile devices and retained by their owners, even as these owners move around the country, it is a bad assumption to presume that Cyron was on notice that it was dealing with a North Carolinian. And in any event, the North Carolina area code is certainly not enough to impute to defendants an intent to target the state.[1]

Whether viewed individually or as an aggregate, defendants' advertising activities do not demonstrate a manifested intent to target North Carolina, nor to make North Carolina the focal

---

[1] The prospective customer eventually purchased the Torch, but not until July 29, 2019—after the complaint was filed. The purchase is therefore irrelevant to the personal jurisdiction inquiry. *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, No. 1:09-CV-550 AJT-TRJ, 2009 WL 3366929, at *6 (E.D. Va. Oct. 16, 2009). Moreover, this case arises from the false advertisements about PROBEAM, not from the Torch products. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017).

8

point of the wrongful activity. Cyron posted its advertisements publicly on its website and Facebook page for all to see. The company targeted motorcycle dealers across the country indiscriminately. And it responded to a single email inquiry from a would-be customer who happened to reside in North Carolina. None of this reveals intent to direct false advertising into the forum. For this reason, the Court is without personal jurisdiction over defendants.

"[A]ny judgment entered against a defendant over whom the court does not have personal jurisdiction is void." *Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir. 1998). Without personal jurisdiction, the Court will not enter default judgment. Accordingly, the Court will set aside the default, deny the motion for default judgment, and grant the motion to dismiss.

## CONCLUSION

For the reasons discussed above, the motion for default judgment [DE 16] is DENIED and the motion to set aside default [DE 27] is GRANTED. The motion to dismiss for lack of personal jurisdiction [DE 29] is GRANTED. The motion to transfer [DE 31] is DENIED AS MOOT. The consent motions to seal [DE 62, 64] are GRANTED. The Clerk is DIRECTED to seal the relevant docket entries [DE 52, 53, 54, 55, and 60]. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. The Clerk is DIRECTED to close the case.

SO ORDERED, this __15__ day of June, 2020.

*Terrence Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE